## John F. Devine, Administrator, Appellee, v. Illinois Central Railroad Company, Appellant.

### Gen. No. 15,117.

1. VARIANCE—*when does not appear.* If the allegation upon which the objection of variance is predicated may be stricken from the declaration as surplusage without changing its legal effect, a legal variance does not appear.

2. SAFETY APPLIANCE ACT—*federal law construed.* The phrase "any car used in interstate traffic" is to be "held to apply to all * * cars used on any railroad engaged in interstate commerce."

3. INSTRUCTIONS—*when under safety appliance act not erroneous.* In an action predicated upon the federal safety appliance act requiring the use of automatic couplers, etc., instructions are not erroneous which contain a mere statement of the act of Congress.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Cook county; the Hon. SAMUEL C. STOUGH, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed June 16, 1910. *Certiorari* denied by Supreme Court (making opinion final).

CALHOUN, LYFORD & SHEEAN, for appellant; JOHN G. DRENNAN, of counsel.

JAMES C. McSHANE, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an appeal from a judgment against defendant for alleged negligence causing the death of plaintiff's intestate, Elias Statton.

The cause was submitted to a jury upon a single count of the declaration setting forth in substance that the deceased was employed as a switchman by the defendant corporation, which possessed and operated as a common carrier a certain railroad engaged in interstate commerce and traffic; "that as such switchman deceased was required by defendant to uncouple two cars standing upon one of defendant's tracks in its Fordham yards," which cars the plaintiff alleges were then and there being used by the defendant on its said railroad in moving interstate traffic; that by virtue of an Act of Congress entitled "An Act to promote the safety of employees and travelers upon railroads by compelling carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes and their locomotives with driving and wheel brakes and for other purposes," and of the amendments to said Act which were then in full force and effect, it was the duty of the defendant to have equipped and maintained said cars which it so required the deceased to uncouple with couplers coupling automatically by impact and which could be uncoupled without the necessity of a person going between the ends of said cars; and it was by said Act and amendments made unlawful for defendant to use said cars unless so equipped and maintained; yet that defendant unlawfully and negligently failed and neglected to so equip and maintain said cars, but unlawfully and negligently permitted one of the couplers with which one of said cars had been equipped to become broken out of and removed from said car so that said cars could not be uncoupled without the deceased going between the ends of said cars. It is alleged

that defendant knew, or by the exercise of ordinary care could have known, that said coupler was so broken out and removed from said car as aforesaid, in time to have avoided the injury and death complained of. It is further alleged that the deceased in the discharge of his duty and as a direct result and in consequence of his being unable to uncouple said cars without going between their ends, was required to and did go between the ends of said cars to uncouple them; and that while so doing and while between the ends of said cars and exercising ordinary care and caution for his own safety, said cars were suddenly and unexpectedly to the deceased shoved together and deceased was caught between the ends of said cars and so crushed and injured that as a result he died, leaving a widow and three children his next of kin.

There is no dispute as to the cause or manner of the accident. Plaintiff called as witnesses other members of the crew to which deceased belonged, the only persons having personal knowledge of the circumstances, and the defendant rested its case upon the completion of plaintiff's testimony. Omitting preliminary occurrences, material facts are as follows: The accident occurred on Sunday, April 5th, 1903. Deceased was a member of what is called a "transfer" crew, which on the morning of that day undertook to couple up a train of about eighteen cars destined for South Chicago and intermediate points. In doing this it was discovered that the draw bar or coupler had been pulled out from the north end of an Illinois Central car loaded with coal and consigned to the 68th street pumping station. As a substitute for the missing draw bar or coupler a chain had been attached to that coal car, fastened to the truck around the bolster. The crew made use of this to chain that end of the car to the car next adjoining and north of it, which was an empty box car belonging to the B. & O. Railroad Company, which had its coupling appliances in good order. Having coupled up this train, the crew, including the deceased, went about other work. In the afternoon the crew returned to the Fordham yards and found the two cars in question still standing in the place and fastened together in the manner in which they had left them

in the forenoon. The 68th street pumping station did not receive deliveries on Sunday, and the crew were directed to cut out that bad-order car which was near the middle of the train composed of eighteen or nineteen cars destined for delivery at South Chicago or intervening points, and to throw it on track 18. To do this the engine was coupled to the cars of the train which were north of the bad-order car and pulled it and them northward until they had cleared the switch.

After the train had been pulled north over the switch the deceased threw the switch. This switch was on the west side of the train. He then crossed over behind and south of the coal car, to the east side of the train, which was the side of the engine where the engineer was stationed and the side upon which the switchmen were in the habit of working. He then walked to the north end of the bad-order car to uncouple or disconnect it, and as he was so doing one of his fellow switchmen signaled the engineer, without the knowledge of the deceased, to back up, and just as the deceased reached the north end of the bad-order coal car and stepped in between it and the car ahead of it to disconnect them, the detached cars were shoved back together against the coal car, and there being no draw bar at that north end of the coal car, when the next car north came back against it, the deceased was caught between them and crushed to death.

Counsel for defendant say that at the conclusion of the plaintiff's evidence they were of opinion that there was no evidence tending to establish the essential averment of the declaration that "said cars were then and there being used by the defendant on its said railroad in moving interstate traffic," and they accordingly rested defendant's case. It is now sought to reverse the judgment upon the ground, first, that the court erred in refusing defendant's motion peremptorily to instruct the jury to return a verdict for defendant; second, that errors were committed in giving and refusing instructions.

The contention that the court erred in refusing the motion for a peremptory instruction requested in defendant's behalf is based upon the claim that there was no proof the cars in

question were at the time of the accident engaged in interstate commerce; no proof that defendant at the time of the accident was engaged in hauling or moving on its line of railroad any car used in moving interstate traffic; and no proof that at the time of the happening of the accident the defendant was engaged in interstate commerce by railroad. It appears that all the other counts of the declaration were withdrawn from consideration of the jury. If therefore this verdict and judgment are to be sustained, it must be upon the ground of liability under the federal safety appliance Act referred to in the declaration. The provisions of the Act as it was in force at the time of the accident are set forth as follows:

"Sec. 2. That on and after the first day of January, 1898, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line, any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." Act of March 2, 1893.

"Sec. 6. (As amended April 1, 1896.) That any such common carrier, using any locomotive engine, running any train or hauling or permitting to be hauled or used on its line any car in violation of any of the provisions of this act, shall be liable to a penalty of $100 for each and every such violation, to be recovered in a suit or suits," etc.

"Sec. 8. That any employe of any such common carrier who may be injured by any locomotive, car or train in use contrary to the provisions of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car or train had been brought to his knowledge."

It is contended by defendant that for want of the proper proof required, the federal safety appliance Act as in force April 5, 1903, when the accident occurred and before the amendment of March 2d, 1903, went into effect, has no application. There is evidence however tending to show that

the defendant Company was a "common carrier" using cars "in moving interstate traffic," within the language and meaning of the Act in controversy. The Act is construed by the subsequent amendatory Act of 1903. A witness called by plaintiff, a car accountant in the employ of the defendant, testified that in April, 1903, and before that time, the defendant "was a common carrier engaged in moving both state and interstate traffic and commerce;" that its railroad ran through intermediate States from Chicago to New Orleans and to Omaha and Sioux City. By the said amendatory Act of 1903 it is provided that "the provisions and requirements hereof and of said Acts" in force at the time of the accident "shall be held to apply to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce." The provisions of the amendatory Act by its terms did not however take effect until September 1, 1903, whereas the accident in controversy occurred April 5, 1903. It is contended in behalf of plaintiff however, as it was by the Attorney-General of the United States in Johnson v. So. Pacific Ry. Co., 196 U. S. 1–8, that the amendatory Act of March 2, 1903, "did not change or enlarge the earlier law but should be viewed as a legislative construction and merely declaratory thereof," and that its suspension by its terms so that it should "not take effect until September 1, 1903, related to the new features introduced into the law as to the minimum number of the cars in a train to be operated by train brakes." This contention has much persuasive force and the view was apparently adopted by the Court in said Johnson case, *supra,* in which it is said (p. 21): "As we have no doubt of the meaning of the prior law, the subsequent legislation cannot be regarded as intended to operate to destroy it. Indeed the latter Act is affirmative and declaratory and in effect only construed and applied the former Act." To the same effect is what is said in Schlemmer v. Ry. Co., 205 U. S. 1–10, in which case the court says: "The words 'used in moving interstate traffic' should not be taken in a narrow sense. The later Act of March 2, 1903, * * * * in our opinion indicates the intent of the original Act." In

U. S. v. Freeman, 3 Howard, 556–564, it is said that "If it can be gathered from a subsequent statute in *pari materia* what meaning the legislature attached to a former statute, it will amount to a legislative declaration of its meaning and will govern the construction of the first statute." So construing the original Act above quoted, the phrase therein "any car used in moving interstate traffic" is to be "held to apply to all * * * cars used on any railroad engaged in interstate commerce." We are inclined moreover to concur in the view urged by plaintiff's counsel, that the allegation of the declaration as to the use of the car may if necessary be regarded as surplusage, which it is said in Barnes v. N. T. Co., 169 Ill. 112–118, "comprehends whatever may be stricken from the record without destroying the right of action or the charge on the one hand or the defense on the other." The rule therefore which requires the proof to correspond with the allegations would not apply where, as here, "the allegation may be stricken out entirely as surplusage, without impairing or changing the legal effect of the declaration." We are of opinion however that the coal car of the defendant which had no coupler at the time of the accident and so caused the death of plaintiff's intestate, is within the statute, since the proof shows it was a car used on a railroad engaged in interstate commerce. In U. S. v. St. L. I. M. & S. Ry. Co., 154 Fed. 516–518, it was said that the phrase "used in moving interstate traffic" includes "a car that has been used for such purpose, stands ready and is intended to be used for such purpose whenever needed." The proof shows that the defendant was a common carrier, that it operated its railroad in moving both state and interstate traffic through many States in different directions, that it "did not keep any particular cars for State traffic and others for interstate traffic," that "a car may today have a State load and tomorrow an interstate load." This evidence *prima facie* tends to prove that all defendant's cars were "used in moving interstate traffic" within the meaning of the statute.

We do not understand defendant to claim there is any

evidence that the particular car in question was not so used. The contention seems to be that such use is not directly shown by the evidence as to this car. We think the proof sufficient to make out a *prima facie* case and to throw the burden upon defendant to prove the contrary by proper evidence which was within its own control. We find no error in the refusal of the court to direct a verdict for defendant at the close of plaintiff's case.

It is urged in defendant's behalf that the proximate cause of the accident was the negligence of a fellow servant of the deceased acting as rear switchman, who gave the back up signal to the engineer which caused the cars to come together just as the deceased came between them. What is a proximate cause is ordinarily a question of fact to be determined by a jury. It is apparent that the negligence of the other switchman in giving the signal to back would not have injured the deceased in all human probability had the coal car which he was endeavoring to cut out been equipped with a draw bar or coupler. The rule is well stated in I. C. R. R. v. Siler, 229 Ill. 390–394. And we concur in what is said in C. J. Ry. Co. v. King, 169 Fed. Rep. 372–378, that "the negligence of the engineer is immaterial whether it be taken as that of defendant or of a fellow servant of plaintiff, for defendant cannot be exempted from liability by reason of the concurrence of another." See also So. Pac. Co. v. Allen, 106 S. W. Rep. 441–447. Whether in this case the question of proximate cause be deemed one of law or fact the result must be the same.

Complaint is made of certain instructions. We find no error in giving those which contained a mere statement of the Act of Congress referred to in the declaration. The next instruction complained of is substantially the same as that passed upon and approved in So. C. C. Ry. Co. v. Kinnare, 216 Ill. 451–456. In connection with other instructions given in the case at bar, we think the instruction is not open to the objections urged. The next instruction to which exception is taken is a verbatim copy of an instruction approved

in Consolidated Traction Co. v. Schritter, 124 Ill. App. 578–581, and in 222 Ill. 364–367.

Finding no material error in the record, the judgment of the Circuit Court must be affirmed.

*Affirmed.*