# CASES

## John F. Devine, Administrator, Appellee, v. Chicago & Calumet River Railroad Company, Appellant.

### Gen. No. 16,073.

1. SAFETY APPLIANCE ACT—*who common carrier within meaning of*. Held, under the evidence in this case, that the defendant was a common carrier within the meaning of the federal and state Safety Appliance Act.

2. SAFETY APPLIANCE ACT—*construed*. Held, upon authority of Luken v. L. S. & M. S. Ry. Co., 248 Ill. 377, first that the duty of the carrier is absolute under both federal and state statutes to equip and maintain safety appliances as those statutes require without question as to reasonable care or absence of intentional violation of the acts. Second, that it was not error to submit the cause to the jury under separate counts on each statute, the federal and state acts, but that it would have been error to require plaintiff to elect under which counts to submit it. Third, that the deceased by going between the cars did not assume the risk under either statute. Fourth, that although one of the cars between which, in the case at bar, the jury was inflicted, was empty, it was "being hauled from one point in Illinois to another in the same state," and, "the law applies as well to empty cars as to loaded cars," that, "the character of the traffic the car was being used for at the time of the injury is to be determined from the proof as to the points between which the car was being moved at the time," whether the road "was an interstate road and whether the car was sometimes used in interstate traffic or not." Fifth, that the acts

(450)

in question are to be liberally construed, though penal, and "are not to be construed so strictly as to defeat the obvious intention of the legislature," since "the design to give relief was more dominant than to inflict punishment."

3. INSTRUCTIONS—*when technical errors will not reverse.* Where it is apparent that the jury have not been misled and the result is substantially correct technical errors do not afford sufficient ground for the reversal of a judgment.

Action in case. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed March 14, 1912. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** In this action appellee seeks to recover for personal injuries resulting in the death of one Virgil Knox April 20, 1907. The deceased was an employe of the defendant, and was at work when injured in the private enclosure of the Western Steel Car and Foundry Company at Hegewisch, Illinois. This enclosed yard of the Foundry Company contained about 120 acres. The accident occurred upon the railroad tracks owned and used by defendant. Deceased was foreman of the switching gang with which he was working the night of the accident. They were handling cars which had been delivered in the yard by different railroads. The deceased had worked for appellant more than a year. He had acted as foreman for several months. The accident happened at a point where there was a sharp curve in the defendant's track. It is said the curve was such that cars, when brought together, came within eight inches of each other on the inside of the curve, and that no coupler was known at the time of the accident which would automatically couple by impact on such a curve. There is testimony tending to show it was the custom of deceased and his gang of switchmen, when called on to couple to a car standing on the curve at the place in question, to push the car beyond the curve to where the track was straight enough to permit the cars to couple automatically.

At the time of the accident an engine had been pushing an empty car westward toward a Pennsylvania car, the east end of which was at or near the point of the curve. The deceased had been walking beside the track a few feet from the west end of an empty car that was being pushed west toward the partly loaded Pennsylvania car. The cars came together but did not couple, and the impact sent the Pennsylvania car westward a short distance along the track and up a slight incline, which it is said had existed unchanged since the tracks were originally located. The westward motion of the train had ceased and the engine had stopped at a point which left the west end of the empty car standing at the so-called point of the curve. The deceased apparently had started to follow the Pennsylvania car, but if he did so he turned back and placed himself between the tracks at the west end of the empty car and near the south rail of the track. While he was standing there the Pennsylvania car of its own motion and by force of gravity started back down the incline and ran against the west end of the empty car, catching the deceased between the two cars and inflicting injuries causing his death.

FRANK M. Cox and R. J. FELLINGHAM, for appellant; ANDREW R. SHERIFF, of counsel.

JAMES C. McSHANE, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

Counsel have filed in this case briefs and supplemental briefs containing about 313 pages. We cannot within limits appropriate to an opinion undertake to follow these arguments in detail.

Defendant's counsel state their first contention as follows: That in each count of the declaration "appellee charges that the proximate cause of the accident was the improper condition of the coupler. He did not

Devine v. Chicago & Calumet River R. R. Co., 168 Ill. App. 450.

prove this averment. The evidence proves beyond question that the proximate cause was the acuteness of the curve and the grade in the track at the place in question, with both of which and with the fact that the acuteness of the curve made it impossible to couple cars automatically by impact at that place, deceased and the men under his direction were familiar. Hence the proximate cause of the accident as proven by the evidence was not averred in any count, and did not establish a cause of action against appellant if it had been for the reason it was not in any degree the result of negligence on the part of appellant. It was a risk assumed by deceased.'' Hence, it is claimed, the trial court erred (1) in denying appellant's motions for a directed verdict; (2) in refusing certain of appellant's instructions as to proximate cause and assumed risk; (3) in denying appellant's motions for a new trial and in arrest of judgment; and, (4) in entering judgment on the verdict.

It is urged secondly that plaintiff (appellee) averred in each count of his declaration that deceased was in the exercise of ordinary care in going between and while between the ends of the cars where he was injured, but did not introduce evidence to support these averments; that on the contrary, by undisputed evidence it appears deceased was guilty of gross contributory negligence.

The third contention is in substance that plaintiff in certain counts of his declaration avers that defendant was a common carrier operating a railroad engaged in moving traffic between points in the State of Illinois; that defendant negligently and contrary to the statute hauled and used in moving traffic between points in said State of Illinois a certain car with a defective coupler and of such kind and construction that it could not be coupled from the side of the car without the necessity of the switchman going between the ends of the cars; that it is averred in other counts that defend-

454 APPELLATE COURTS OF ILLINOIS.

Devine v. Chicago & Calumet River R. R. Co., 168 Ill. App. 450.

ant was then and there engaged in moving interstate traffic; that there is no evidence to support either averment; that the trial court erred in giving and refusing other instructions and that the damages allowed are excessive.

Two counts of the plaintiff's declaration are based upon the Federal Safety Appliance Act of March 2, 1893, amendments thereto (chap. 196, sec. 2, 27 Stat. at L. 531; U. S. Comp. Stat. 1901, p. 3174), and the Federal Interpretive Act of 1903; (chap. 976, sec. 32, Stat. at L. 943; U. S. Comp. Stat. Supp. 1905, p. 603.) Two other counts are based upon an alleged violation of the Safety Appliance Act of 1905 of the State of Illinois. (Hurd's R. S. 1908, p. 1709.) The federal acts relate to interstate and the State act to intrastate traffic. It is claimed that this is the only material difference between them. The federal act provides that it shall be unlawful for any common carrier "to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers, coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars." (Section 2, U. S. Comp. Stat. 1901, p. 3174.) By an amendatory Act of March 2, 1903, the phrase "any car used in moving interstate traffic" is to be "held to apply to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce." In section 8 of the Federal Act it is further provided that any employe of any common carrier who may be injured by any locomotive, car or train "in use contrary to the provision of this act shall not be deemed thereby to have assumed the risk thereby occasioned although continuing in the employment of such carrier after the unlawful use of such locomotive, car or train had been brought to his knowledge." The Illinois Safety Appliance Act is apparently modelled after the Federal Act. Section 9 is in substance a copy of section 8 of the Federal

Act, except that it provides that any such employee shall not only "not be deemed to have assumed the risk thereby occasioned," but adds, "nor to have been guilty of contributory negligence because of continuing in the employment of such common carrier or in the performance of his duties as such employe after the unlawful use" has been brought to his knowledge. Section 8 of the Federal Act containing the provision relating to assumed risk has been construed as impliedly eliminating both assumed risk and contributory negligence, while both these defenses are expressly eliminated by the State Act. It is said that by instructions complained of in this case the trial court treated the question of contributory negligence as the same under all counts of the declaration, and plaintiff insists it is immaterial whether the use of the cars in question was a violation of the Federal or State Acts, that if it violated either it violated both.

That defendant is a common carrier there is evidence tending to show. Under the constitution of this State however (Sec. 12, Art. 11) all railways are "declared to be public highways and shall be free to all persons for the transportation of their business and property thereon." To the like effect is section 22 of an Act in reference to the operation of railroads (R. S. p. 1677), which provides that every railroad corporation shall furnish, start and run cars for the transportation of such passengers and property as shall be ready or offered for transportation upon due payment or tender of payment of tolls, freight, etc. In P. & P. U. Ry. Co. v. C. R. I. & P. Ry. Co., 109 Ill. 135-140, the defendant's principal business was switching cars for other railroad companies, and it was held to be "a common carrier of cars" with or without freight. The court says: "As to the freight the car contains it will be conceded such carrying roads are common carriers and are subject to the strict liability of such carriers." In the case at bar there is evidence that the defendant

handled cars containing freight which were delivered to it by other roads. These cars contained coal and the material out of which were built new cars and "were loaded when they came in." They "were regular freight cars," and defendant was clearly a common carrier within the meaning of the federal and state safety appliance acts.

It is contended in behalf of defendant, appellant herein, that the deceased when hurt was engaged in a switching operation which had nothing to do with interstate or intrastate traffic, that consequently neither of these safety appliance acts applies and the defendant is not liable under them. The plaintiff, it is argued, dismissed the common law counts of his declaration, and if defendant is not liable under the federal and state safety appliance acts there can be no liability in this action. Defendant contends that the switching operation in which deceased was engaged at the time of the accident was neither state nor interstate commerce. In support of this contention defendant's counsel cites Howard, admx., v. Ill. Cent. R. R. Co. et al., and Brooks, Admx., v. Southern Pacific Co., 207 U. S. 463. The question involved there related to what is known as the Federal Employer's Liability Act, and appellant's argument is that under the holding of the Supreme Court, if the act is broad enough to furnish a remedy to a servant not injured while actually engaged in interstate commerce, then it was unconstitutional. These contentions have been considered in Southern Railway Co. v. United States, opinion by Mr. Justice Van Devanter, reported in the Supreme Court Reporter (West Publishing Co.) of December 1, 1911. The case involved provisions of the Federal Appliance Acts under consideration in the case at bar. It was argued that "hauling in interstate commerce, although upon a railroad over which traffic was continually being moved from one State to another, was not within the prohibition of the safety appliance acts of Congress; and that if it was, those

acts should be pronounced invalid as being in excess of the power of Congress under the commerce clause of the constitution.'' The real controversy, says the court, was over the true significance of the words ''on any railroad engaged,'' and the true test of their application ''is the use of the vehicle on a railroad which is a highway of interstate commerce, and not its use in moving interstate traffic.'' It is held that the original act as enlarged by the amendatory act ''is intended to embrace all locomotives, cars and similar vehicles used on any railroad which is a highway of interstate commerce.'' Upon the question of constitutionality also the act is held valid. In Devine v. Ill. Cent. R. R. Co., 156 Ill. App. 369-375, we said that construing the federal appliance act in question in accordance with the construction given it by the federal amendatory act of March 2, 1903, ''the phrase therein, 'any car used in moving interstate traffic' is to be 'held to apply to all cars used on any railroad engaged in interstate commerce.' '' In U. S. v. St. L. I. M. & S. Ry. Co., 154 Fed. 516-518, it is said that the phrase ''used in moving interstate traffic'' includes ''a car that has been used for such purpose, stands ready and is intended to be used for such purpose whenever needed.'' In the case at bar it is conceded that one of the two cars between which the deceased was caught and injured—the so-called Pennsylvania car—was used in interstate commerce and was partly loaded apparently with the intention of being continued in such use. It was moreover one of many cars used in interstate commerce, handled by defendant in like manner.

The State Act provides that ''The provisions and requirements of this act   *   *   *   shall be held to apply to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in moving traffic between points in the State of Illinois.'' The same act provides that it shall ''be held to apply to common carriers engaged in moving traffic by railroad between points in this State.''

In Luken v. L. S. & M. S. Ry. Co., 248 Ill. 377-383, it is held that in construing a Federal statute the Illinois court is bound by the construction placed upon the act by Federal courts; and that the great weight of authority in the Federal courts holds it to be "the absolute duty of common carriers not to haul cars which are not equipped with safety appliances that will operate for the purpose for which they are required to be provided, and relief from the liability provided for non-compliance with the act cannot be obtained by showing reasonable care and want of intentional violation of the statute." The court proceeds *(Idem,* p. 383) to give "the State statute the same construction that the Federal courts have given the Federal statute, holding that the duty imposed upon the carrier to equip and maintain safety appliances in such condition of repair that they will operate in the manner and for the purpose intended is absolute, and the carrier cannot be heard to say in defense of an action brought by one injured in consequence of its failure to perform its duty, that the plaintiff is bound to prove that the carrier did not exercise reasonable care to maintain the safety appliances in good condition and repair." In that case there were two counts in the declaration, one based upon the State statute and the second upon the Federal statute, in like manner as in the case at bar. The defendant pleaded the general issue as in this case, and it is held to be error for the trial court to require "plaintiff to elect under which count the case should be submitted to the jury;" that "it should have been submitted under both counts." The same case disposes of the question raised by appellant as to assumed risk and contributory negligence. The court (p. 388) after finding that "the Federal statute has been construed as abolishing the doctrine of assumed risk in all cases to which the statute is applicable" (citing cases, among others Schlemmer v. Railway Co., 205 U. S. 1, where the court said: "We are clearly of opinion that Schlemmer's rights

were in no way impaired by his getting between the rails and attempting to couple the cars. So far he was saved by the provision that he did not assume the risk''), proceeds to hold that ''Under the Illinois statute plaintiff cannot be held to have assumed the risk of injury by going between the cars in the performance of his duties, and it does not appear that he was negligent in any other respect.''

The case, it will be seen, disposes of a number of appellant's contentions in the case at bar. It holds, first, that the duty of the carrier is absolute under both Federal and State statutes to equip and maintain safety appliances as those statutes require, without question as to reasonable care or absence of intentional violation of the acts. Second, that it was not error to submit the cause to the jury under separate counts on each statute, the Federal and the State acts, but that it would have been error to require plaintiff to elect under which counts to submit it. Third, that the deceased by going between the cars did not assume the risk under either statute, and we are of opinion that in this case as in that, it does not appear that he was negligent in any other respect. Fourth, that although one of the cars between which in the case at bar the injury was inflicted, was empty, as in that case, it was ''being hauled from one point in Illinois to another in the same State,'' and ''the law applies as well to empty cars as to loaded cars,'' that ''the character of the traffic the car was being used for at the time of the injury is to be determined from the proof as to the points between which the car was being moved at the time,'' whether the road ''was an interstate road and whether the car was sometimes used in interstate traffic or not.'' Fifth, that the acts in question are to be liberally construed, though penal, and ''are not to be construed so strictly as to defeat the obvious intention of the legislature,'' since ''the design to give relief was more dominant than to inflict punishment.'' Johnson v. So. Pacific, 196 U. S. 1. In Schlemmer v.

460    Appellate Courts of Illinois.

Devine v. Chicago & Calumet River R. R. Co., 168 Ill. App. 450.

Ry. Co., 205 U. S. 1-10, it is said: "The words 'used in moving interstate traffic' should not be taken in a narrow sense." In the Luken case, *supra,* (p. 382-3) the Supreme Court of this State adopts the construction of the Federal courts and gives the State statute the same construction.

What has been said substantially disposes, we think, of the defendant's contention above set forth as to proximate cause of the accident. This is to the effect that it was the acuteness of the curve in the defendant's track and not the improper condition of the coupler as alleged in the declaration, that the accident was not the result of negligence on the part of deceased and was a risk assumed by him. There is evidence tending to show that one of the links of the lifting pin on the coupler of the Pennsylvania car was out of order. In Devine v. Ill. Cent. R. Co., *supra,* we said, "what is proximate cause is ordinarily a question of fact to be determined by a jury." In I. C. R. R. v. Siler, 229 Ill. 390-392, it was said, "it can only arise as a question of law or pleading when the facts are not only undisputed, but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." The declaration charges the hauling and using a car with an automatic coupler so defective, broken and inoperative that it could not be coupled without the necessity of the switchman going between the ends of the cars to couple them, and that as a direct result and in consequence of the kind and construction of the coupler deceased was required to go between the ends of the cars to open the knuckles. The argument of defendant's counsel is that neither the defective condition nor the kind and construction of the coupler had anything to do with the accident, that "there was no automatic coupler known that would couple automatically by impact on so sharp a curve." The deceased however was not responsible for the curve, nor for the use of such car thereon nor for the coupler. If by

reason of the curve or any other cause the couplers would not couple on that track, and it became necessary for the deceased to go between the cars, then the statutes in question were violated.    As held in the Luken case, *supra,* the duty of the carrier is absolute.

Appellant requested the court to give seventy instructions.    Of these some were given, others modified and the majority refused.    The three instructions requested by appellee's counsel were given.    We have examined the instructions and find no material error in the action of the trial court thereon.    What we have said above sufficiently states reasons which justify the court's action in refusing many of them.    In passing upon many instructions prepared by counsel, which oftentimes contain repetitions and are ingeniously framed, it would be strange if trial courts did not at times make technical errors which afford counsel opportunities for criticism.    But where, as in this case, it is apparent the jury have not been misled and the result is substantially correct, such technicalities do not afford sufficient ground for reversal of a judgment.

The jury assessed the damages at $10,000.    The trial Court required a *remittitur* of $2,000 and entered judgment for $8,000.    It is claimed the amount of the judgment is excessive.    The deceased was forty-eight years of age.    Many cases may be found where juries in such cases have awarded larger as well as smaller sums.    In the case at bar no sufficient reason appears why we should undertake to reduce the amount of the judgment which has met the approval of the trial court, and is less than the jury awarded.

Finding no material error in the record, the judgment of the Superior Court will be affirmed.

*Affirmed.*

(NOTE BY THE COURT.)    This case was decided by the full court as it then existed before Mr. Justice McSurely succeeded Mr. Justice Kavanagh.