## UNION PAC. R. CO. v. FULLER.

(Circuit Court of Appeals, Eighth Circuit. March 3, 1913.)

No. 3,873.

1. MASTER AND SERVANT (§ 285*)—DEATH OF SERVANT—RAILROAD BRAKEMAN —PROXIMATE CAUSE.

In an action for death of a railroad brakeman by being crushed between the deadwood of a car and the buffer beam of another one as he was coupling the air hose, whether the engineer's negligence in having the air lever either in full release or in running position, instead of in lap, was the proximate cause of the injury, *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002, 1003, 1007, 1008, 1016, 1035, 1043, 1053; Dec. Dig. § 285.*]

2. MASTER AND SERVANT (§ 216*)—DEATH OF SERVANT—RAILROAD OPERATION —ASSUMED RISK.

Decedent, a brakeman on an interstate train, after certain cars had been coupled to other cars on which the air brakes were set, went between the cars to couple the air hose, and, not knowing that the train was on a downgrade, opened the angle cock on the cars nearest the engine, and then reached across the buffer or deadwood to open the angle cock on the front end of the rear cars, and as he did this the brakes were suddenly released, due to the fact that the engineer negligently had the air lever in an improper position, and the rear cars moved down on and crushed him. *Held*, that the risk of injury as the result of such negligence was not one of the risks of decedent's employment that he assumed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 567–573; Dec. Dig. § 216.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the District Court of the United States for the District of Nebraska; Page Morris, Judge.

Action by Emma M. Fuller, administratrix of the estate of John C. Fuller, deceased, against the Union Pacific Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This action was instituted by the administratrix of the estate of John C. Fuller, deceased, to recover damages under the national Employer's Liability Act on account of the death of said decedent, alleged to have been caused by the negligence of the defendant. The decedent was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the employ of the defendant as a brakeman at the time of the alleged accident, and the negligent act of the defendant charged in the complaint is:

"That on or about the 17th day of October, 1908, there were standing upon one of the tracks of the defendant company in the city of Omaha 20 loaded freight cars upon which the brakes were set; that while said cars were thus standing, the defendant caused said locomotive engine to back a train of 3 cars against said standing cars for the purpose of coupling the said train to said standing cars, and did thereby effect automatically a coupling of said train to said standing cars; that immediately after effecting said coupling the said John C. Fuller, in the discharge of his duty as a brakeman in the employ of the said defendant railroad company, and while employed by the defendant in interstate commerce, reached across the drawbars of the connecting cars of said train and said standing cars and through which said coupling had been effected, for the purpose of coupling the air brake tubes between said cars; that in doing this his body came between the drawheads or deadwoods of said cars, and that while in said position, in the performance of said duty, and without any carelessness or negligence upon his part, the said defendant negligently and carelessly, and without proper regard for the safety of the said John C. Fuller, caused said locomotive engine to back said train against said standing cars, and so manipulated said locomotive and so set and used the engineer's brake valve thereon as to cause and permit said last-mentioned cars to move and thereby crush the said John C. Fuller between said deadwoods or drawheads of said cars, and thereby caused his instant death."

The answer denied that defendant was guilty of negligence, and charged that the decedent was guilty of negligence, which was the proximate, direct, and contributing cause thereof, and that the injury was not due in any manner to any negligence or failure of duty on the part of the defendant. It also pleads assumption of risk. There was a trial to a jury, and a verdict for the plaintiff.

John A. Sheean, of Omaha, Neb. (Edson Rich, of Omaha, Neb., on the brief), for plaintiff in error.

Constantine J. Smyth, of Omaha, Neb. (Edward P. Smith and W. A. Schall, both of Omaha, Neb., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and W. H. MUNGER and TRIEBER, District Judges.

TRIEBER, District Judge (after stating the facts as above). While there were a number of exceptions taken by the defendant during the trial, the only errors relied upon, as stated in the brief of the counsel for plaintiff in error, are that:

"(1) The verdict is contrary to law; (2) the verdict is not sustained by the evidence; and (3) the court below erred in overruling the motion, made by the defendant at the close of the whole case, to direct the jury to return its verdict in favor of the defendant and against the plaintiff."

These exceptions necessitate a review of the evidence for the purpose of determining whether there was any substantial evidence to warrant the submission of the case to the jury. There is substantial evidence to establish the following facts:

The decedent was in the employ of the defendant as a brakeman on a freight train. The train, upon which he was the head brakeman at the time of the injury, had come into the yards at Omaha, Neb., from Grand Island, with 35 or 36 cars, 13 of which were to be

set out in Omaha, and others taken to Council Bluffs, Iowa. The train came to a stop on Union Pacific track No. 4, which was supposed to be level, but by placing an engineer's instrument on the ground at that point it was discovered that there was a grade of about 11 feet to the mile at the point where the accident occurred; but there is no evidence that the decedent knew this. The train was stopped for the purpose of cutting out the 13 cars for Omaha and others for places other than Council Bluffs. The 20 rear cars in the train, and the second, third, and fourth cars back from the engine, were to be taken to Council Bluffs. The second, third, and fourth cars were to be placed on the track upon which the 20 had been left standing. The one next to the engine was detached from the other 3, switched to another track, and the engine came back and coupled onto the 3 cars. The angle cock on the air hose on the ends of the 20 cars was closed, so that the brakes were set on those 20 cars. When the engine came back to the 3 cars, they were pushed up against the string of 20 cars in the usual way, but with sufficient force to enable them to connect automatically. The decedent was standing on the side of the track where the 3 cars were coupled onto the 20 cars, and gave the proper signals to the engineer to move the 3 cars back for the purpose of connecting them with the 20 cars and then to stop.

After the 3 cars had been backed and automatically coupled with the 20, and all of them were at a perfect stop, one Schoberg, a fellow brakeman with Fuller on that train, went in between the tender of the engine and coupled the air hose between the tender and the first car, turned the angle cocks, and as he did so heard the air going through the hose. The decedent went between the third and the 20 cars to couple the air hose and release the brakes. After coupling the air hose, he opened the angle cock on the rear end of the last car attached to the engine, and then reached across the buffer or deadwood to open the angle cock on the front end of the 20 cars. As he turned the angle cock, the air from the air tube of these cars passed into the tube of the 20 cars, releasing the brakes on them, which, owing, in part probably, to the decline of the grade at that place, caused these cars to move forward, and, being between the buffers of the two cars, he was crushed and injured so seriously that he died within 45 minutes therefrom. The car on which he last turned the angle cock was a Union Pacific car, and the last of the three cars was a foreign car belonging to another road. This latter car had a buffer beam. The space between the deadwood on the one car and the buffer beam on the other, when they were close together, was approximately 6 inches; when apart, about 16 inches. The decedent was rather stockily built, weighed about 180 pounds, so that after he went in between the deadwood and buffer beam there would need only to be a movement of the cars of a few inches to crush him. After Schoberg had coupled the hose up between the engine and car next to it, he stepped out, and, not seeing Fuller, hollowed to him. Not getting any response, he walked up to the car where Fuller had gone in, and found him crushed between the deadwood and buffer beam.

There was substantial evidence to establish the fact that the air is regulated by a lever on the locomotive; that if the lever is in lap then the air would not be released, while, on the other hand, if it is in a

running position, the brakes will release gradually, while if in full release the brakes would be released at once. There is no dispute but that the air lever was either in running position or in full release. Some of the witnesses on the part of the plaintiff testified that the air rushed through with such force that it must have been in full release, while there is some evidence on the part of the defendant that it was only in running position. There was also substantial evidence to show that it is customary, and the safe and proper method, to have the air valve in lap position when a brakeman goes between the cars for the purpose of coupling the air hose, and that the short distance necessary to move the cars is accomplished with the brakes on. The defendant introduced in evidence instructions issued by the Westinghouse Air Brake Company, which direct:

"Testing Brakes and Signals.—When coupling the hose be sure to have 70 pounds train pipe pressure on the engine, the handle on the engineer's valve in running position, and the pump throttle well open. When notified by the car inspector or trainmen make test as follows"

—and then proceeds to explain how the test should be made. But the witness, who on cross-examination testified to this rule, when asked on re-examination in relation to whether that rule had reference to a situation where the brakes were already set upon the cars to which coupling was to be made, testified:

"No; I do not think it does. I think it has reference to coupling onto cars where there is no air in them at all."

[1] Counsel for the defendant admit that the cause was submitted to the jury under proper instructions and make no complaint on that score; but it is now claimed that the negligence of the locomotive engineer was not the proximate cause of the injury, that the decedent negligently opened the angle cock on the last of the 3 cars attached to the engine before he opened the angle cock on the standing cars, that if he had reversed the order he could not have been injured, that by his act the brakes on the standing cars were released while he was reaching over between the buffer and the beam to open the angle cock on the rear cars, while if he had opened them in the reverse order he could not have been in a position to be injured, and that for this reason it was the negligent act of the decedent that was the proximate cause of the injury.

It is true that if the negligence of the engineer was not the proximate cause of the injury, but that a new force or power intervened between the negligent act and the injury sufficient in itself to stand as the cause of the injury, the negligent act must be considered as too remote to justify a recovery. On the other hand, it is equally well settled that the proximate cause of an injury is not necessarily the act or omission nearest in time and place. Union Pacific Ry. Co. v. Callaghan, 56 Fed. 988, 993, 6 C. C. A. 205, 210; City of Winona v. Botzet, 169 Fed. 321, 328, 94 C. C. A. 563, 570, 23 L. R. A. (N. S.) 204. In the last-cited case the plaintiff had been injured by the running away of a team of horses he was driving, caused by the negligent blowing of a steam whistle by the employés of the city. He held onto his horses and guided them past two teams in front of him, when the

tugs on his harnesses unhooked, the end of the tongue slipped out of the yoke, dropped, and broke. The horses, running on, dragged the end of the broken tongue against the guard rail of a bridge, throwing the occupants of the wagon over the railing on the ice of the river 40 feet below, and injuring them. Judge Sanborn, who delivered the opinion of this court, in answer to the contention that the unhooking of the tugs and the breaking of the pole were the proximate cause of the accident, and the blowing of the whistle only the remote cause, said:

"The proximate cause of an injury is the primary moving cause without which it would not have been inflicted, but which, in the natural and probable sequence of events, and without the intervention of any new or independent cause, produces the injury. The intervening cause that will insulate the original wrongful act or omission from the injury and relieve of liability for it must be an independent, intervening cause, which interrupts the natural sequence of events, prevents the ordinary and probable result of the original act or omission, and produces a different result which could not have been reasonably anticipated. * * * The blast of this whistle was the primary moving cause, without which the accident would not have happened. It was the cause which set in motion all the other events; the cause which set the horses into a dead run, made them uncontrollable, brought about the unhooking of the tugs, the breaking of the pole, the crash of the wagon against the railing, and the throwing of its occupants to the ground below. All these intermediate acts were dependent, not independent, causes. They were mere links in the chain of causation between the blowing of the whistle and the injuries and death it produced, and were themselves caused by the blast of the whistle."

In Shugart v. Atlantic, etc., Ry. Co., 133 Fed. 505, 510, 66 C. C. A. 379, 384, Judge (now Mr. Justice) Lurton, delivering the opinion of the court, said:

"That cause is proximate without which the accident would not have happened, but which in the probable sequence of events, and without the interposition of a new and efficient cause wholly sufficient in itself, produces the wrong complained of."

Applying these rules, it was for the jury to determine, under proper instructions from the court, what was the proximate cause of the accident in this case. Choctaw, etc., Ry. Co. v. Holloway, 191 U. S. 334, 339, 24 Sup. Ct. 102, 48 L. Ed. 207.

In Milwaukee, etc., R. R. Co. v. Kellogg, 94 U. S. 469, 474, 24 L. Ed. 256, it was held:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place."

This rule was recognized by this court in Travelers' Ins. Co. v. Melick, 65 Fed. 178, 180, 12 C. C. A. 544, 27 L. R. A. 629; St. Louis, Iron Mountain & Southern Ry. Co. v. Needham, 69 Fed. 823, 825, 16 C. C. A. 457, 459; Missouri, etc., Ry. Co. v. Byrne, 100 Fed. 359, 363, 40 C. C. A. 402, 406.

The decedent had a right to rely upon the fact that the air lever would be in lap when the connection was made as that was the usual and customary method followed by engineers. He did not know that the track was not entirely level, and that there was sufficient decline in the grade there to cause the cars to move. Had the air lever been in lap, it would have been immaterial whether he opened the angle cock of the standing cars first, or even that there was that slight decline in the grade.

[2] There is nothing in the evidence which would warrant a finding that this was one of the risks assumed by the decedent under his employment. Whether he was guilty of contributory negligence is immaterial, as that would not relieve the defendant of all liability under the national Employer's Liability Act. The only effect it would have had would be to reduce the damages, and there is no complaint on the part of the defendant that the jury, in assessing the damages, failed to take that fact into consideration.

There was no error in submitting the case to the jury, there was substantial evidence to warrant the verdict, and the judgment is affirmed.