PENNSYLVANIA R. CO. v. GOUGHNOUR.

(Circuit Court of Appeals, Third Circuit.   November 29, 1913.)

No. 1,746.

1. MASTER AND SERVANT (§ 204*)—INJURIES TO SERVANT—EMPLOYERS' LIA-
BILITY ACT—NEGLIGENCE OF FELLOW SERVANT.

   In an action for injuries to a freight conductor under the federal Em-
ployers' Liability Act, plaintiff cannot be held to have assumed the risk
of the negligence of his flagman, his fellow servant, in failing to protect
the rear of the train while standing on a main track.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–
546;  Dec. Dig. § 204.*

   Assumption of risk incident to employment, see note to Chesapeake &
O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. MASTER AND SERVANT (§ 247*)—INJURIES TO SERVANT—PROXIMATE CAUSE.

   A freight train having stopped on a main track in the railroad yard, the
engine was run to a position in the rear of the caboose, with the inten-
tion of being coupled to the rear of the train, when the flagman notified
the conductor that there was no air hose on the front of the engine.   The
conductor stated that he would procure a hose and attend to coupling the
engine, and both left the caboose immediately.   In a few moments, while
the conductor was between the engine and the caboose attending to the
coupling, the engine was struck by a train coming up from behind, re-
sulting in injury to the conductor; the flagman not having performed his
duty to protect the rear end of his train.   Held, that the flagman's negli-
gence in omitting to promptly perform such duty, as distinguished from
the conductor's negligence in failing to see that the flagman's duty was
performed, was the proximate cause of the accident.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 795–
800;  Dec. Dig. § 247.*]

3. MASTER AND SERVANT (§ 180*)—INJURIES TO SERVANT—NEGLIGENCE—RAIL-
ROADS—REAR OF TRAIN—FAILURE TO PROTECT.

   Where a freight conductor was caught and injured between his engine
and the caboose by the engine being struck by a train approaching from
the rear, due to the flagman's failure to protect the rear end of the train,
the flagman's negligence, under the federal Employers' Liability Act, was
the negligence of the railway company as a matter of law.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 359–
361, 363–368;  Dec. Dig. § 180.*]

4. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—RAILROADS—NEGLI-
GENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

   Where a freight conductor was injured while attempting to couple his
engine to the caboose by the engine being struck by another train ap-
proaching from the rear, due to the negligence of the conductor's flagman
in omitting to protect the rear end of the train, the conductor's alleged
contributory negligence in failing to see that his flagman performed his
duty to so protect the train held properly submitted to the jury.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089,
1090, 1092–1132;  Dec. Dig. § 289.*]

5. TRIAL (§ 296*)—INSTRUCTIONS—CURE BY OTHER INSTRUCTION.

   Where a freight conductor was caught and injured between his engine
and the caboose by the engine being struck by a following train, and the
court properly submitted the question of the conductor's contributory neg-
ligence in failing to see that the flagman performed his duty to protect the
rear end of the train to the jury, a charge that if, under the circumstances,

the conductor's negligence contributed either in whole or in part to the injury, the jury, under the federal Employers' Liability Act, should reduce plaintiff's recovery pro tanto, the court did not err in affirming one of plaintiff's points that the conductor was entitled to assume, when he went between the engine and the caboose, that the flagman would obey the rules of the company and perform his duty to flag the following train.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; James S. Young, Judge.

Action by Dick E. Goughnour against the Pennsylvania Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Patterson, Crawford & Miller, of Pittsburgh, Pa., for plaintiff in error.

W. Clyde Grubbs and Edwin T. Levengood, both of Pittsburgh, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. The action below was to recover damages for personal injuries sustained by reason of the alleged negligence of the defendant company, in whose service at the time of the injury the plaintiff was employed as a freight conductor. There was a verdict in favor of the plaintiff, to the judgment on which this writ of error was sued out by the defendant.

Speaking of the parties before us as they stood in the court below, the plaintiff was employed as a freight conductor by the defendant. On November 26, 1910, a freight train of the defendant, under his charge, was moved from Conemaugh, in the state of Pennsylvania, to Conway, in the same state, arriving at the latter place at about 5 o'clock in the morning of November 27th. It is admitted that the train thus moved was engaged in interstate commerce. When the train, consisting of some 47 cars, arrived in Conway yards, the morning was dark and foggy. The track on which the train stopped was a running track; that is, trains ran through the yard upon it. Upon stopping, the engine was cut loose from the front of the train and, running around through the yards, which were extensive, came up head on behind the caboose in which the plaintiff and the flagman were sitting. The testimony tends to show that they had remained in the caboose together from the time the train stopped until the engine came up in the rear, to be coupled to the caboose,—a period of from six to ten minutes. Upon the arrival of the engine at the rear of the caboose, the flagman went out to couple the engine, for the purpose of drilling some of the cars of the train, but came back immediately and told the conductor that there was no air hose on the front of the engine. The evidence tends to show that both the conductor and flagman immediately left the caboose, the conductor saying that he would procure a hose and attend to the coupling of the engine. Shortly after

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

they had thus separated—how long, the evidence does not certainly establish—while the plaintiff was between the engine and the caboose attending to the coupling, a train coming from behind, on the running track on which the plaintiff's train was, struck the tender of the engine with such force as to wreck or damage several cars and so crush the plaintiff between the engine and the caboose as to inflict the injuries that are complained of.

The plaintiff testifies that, when he and the flagman left the caboose, he did not see or know where the flagman went. As a matter of fact, the flagman did not attend to his duty of flagging the rear of his train, in consequence of which neglect it is admitted the collision occurred.

The case was brought and tried under the Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. Supp. 1911, p. 1322]), the plaintiff contending that the negligence of the flagman in not protecting the train was the proximate cause of the accident, for the consequences of which, under the act, the defendant was liable. It is contended by the defendant that the proximate cause of the accident was the negligence of the plaintiff in not seeing, as master and controller of the train crew, that the flagman performed his duty, and that inasmuch as the flagman was in the caboose with plaintiff for as long as from six to ten minutes after the train stopped, the plaintiff, by his acquiescence in such conduct, "assumed the risk" of the flagman's negligence; meaning thereby that the plaintiff, who was the master and controller of the train crew, by his acquiescence in this conduct of the flagman, in plain violation of his duty and the rules of the company, was guilty of contributory negligence, and therefore cannot recover. This contention was the substance of the defense and the issue upon which the determination of the case turned, although there was some confusion in the argument in the use of the phrases "assumption of risk" and "contributory negligence."

[1] Under the act above referred to, the plaintiff did not assume the risk of the negligence of his fellow servant, such negligence being that of the master, which is never assumed by the servant. In common parlance, however, the reckless disregard of a casual danger is often spoken of as an assumption of risk by the party exposing himself thereto, although it is not the ordinary assumption of risk implied in the original contract of employment.

[2] In this case, from the evidence disclosed by the record, there seems to have been no ground for dispute that the proximate cause of the accident was the neglect of the flagman to promptly perform the peremptory duty imposed upon him of flagging his train in the usual way. As a matter of fact, it appears from the flagman's own testimony that he did not flag the train at all, even after he got out of the caboose with the plaintiff. As we have said, this negligence was of course imputable to the defendant. Both by the rules of the company and by the character of the service in which the crew of a train is engaged, the necessary relation of the flagman to the conductor is that of a subordinate to his superior. Undoubtedly, the conductor was bound, if the flagman was, to his knowledge, neglecting his duty, to admonish him thereof and see, so far as it was possible, that he performed it.

The safety of the traveling public, as well as of the employés upon such trains, demands that the exigence of these important duties of the flagman and the conductor should be recognized and enforced at all times and upon all occasions.

The important question, then, was whether the conduct of the plaintiff, as evidenced by the testimony, was such as to establish in the opinion of the jury, his knowledge of and acquiescence in the failure of the flagman to properly perform his duty in protecting the train. Though, as we have said, there seems little, if any, room for controversy as to the negligence imputable to the defendant, there was some controversy as to how far the conductor's attention was drawn to the presence of the flagman in the caboose or to his whereabouts after he left the same. On these important points the learned judge of the court below submitted the case to the jury, as follows:

"But the defendant says that not only was the defendant not guilty of negligence, but that the conductor of the train, this plaintiff, was guilty of such negligence as not only contributed in part to, but was the entire cause of the accident. You will recollect the evidence upon that question. The burden is upon the defendant now to satisfy you by the weight of the evidence that the plaintiff was guilty of contributory negligence.

"You understand your first inquiry is, Was the defendant guilty of negligence? The negligence being the alleged conduct of the flagman in not flagging the train, with all the evidence that surrounds that. The burden then shifts to the defendant, if it alleges contributory negligence, and the defendant must then satisfy you by the weight of the evidence of the contributory negligence of the plaintiff, and to what degree it contributed to the accident. And I say to you as a matter of law that you must determine that proportion. If it contributed, we will say, to the extent of one-fourth, then the damages would be reduced by one-fourth, if to one-half, then by one-half. If the contributory negligence of the conductor, this plaintiff, was the cause of the accident, then of course that would wipe out the damages.

"Now, the defendant has shown its book of rules, and that book of rules puts certain duties upon the flagman and certain duties upon the conductor. You will take those rules and consider them, and find what bearing they have upon this negligence or contributory negligence. You will take into consideration such evidence as has been offered by the defendant, and consider it in the light of such evidence as has been offered by the plaintiff, as to the length of time the train remained there, as to the evidence of the conductor and the flagman being in the caboose together, as to how they left the caboose, what the conductor went about, what the flagman went about, what knowledge the conductor had of the conduct of the flagman; take into consideration whether or not the flagman, with the knowledge and consent of the plaintiff, remained there, instead of performing his duty; that is, how far did the conductor's conduct, so far as has been offered in evidence, contribute to the flagman's remaining there. You will take all the evidence surrounding—there is not a great deal of it—but you will take all the evidence surrounding the time of the accident, from the time the train reached the running track, the time consumed by the engine coming around on track 98 and passing over the switches and coupling up, all the conductor and the flagman did up until the time the conductor went in between the cars—the locomotive and the caboose—to put on the air hose; you must consider all that testimony and from it determine whether or not this plaintiff contributed to the injury which came to him; and determine in what proportion it contributed, whether in part or in whole. If in part, then what part. And if altogther, then there could be no verdict for the plaintiff, because the amount to be deducted if his contributory negligence was the sole cause of the accident, would wipe out the damages."

[3] It is to be observed in this charge that it was too favorable to the defendant, in submitting as an open question to the jury, whether

the defendant was or was not guilty of negligence, it having been shown by the flagman's own testimony that he made no attempt to perform his duty of protecting the train, a neglect which, under the law applicable to this case, was, as we have said, clearly imputable to the defendant. But we are of opinion, after a careful reading of the charge in regard to the contributory negligence of the plaintiff, that that question was not unfairly presented to the jury. It is true that the learned judge might have dwelt with somewhat more emphasis on the fact of the flagman's presence in the caboose and of the importance of the testimony in that regard. These facts, however, were not overlooked and were called to the attention of the jury, in language sufficiently plain and direct to satisfy the requirements of the case, if the motion for peremptory instructions in favor of the defendant, under the pleadings and the evidence, were properly refused; the refusal being the subject of one of the two assignments of error with which we are here concerned.

[4] While the question is a close one, we think the weight that should properly be given to the exercise of his discretion by the trial judge justifies us in declining to support the assignment of error in this regard. There does seem some ground to question how far the plaintiff's attention under the circumstances was challenged by the presence of the flagman in the caboose. The plaintiff was said to be busily engaged in writing his reports, or some other matter connected with his business, during the interval between the stopping of the train and the coupling of the locomotive, and as the trial judge thought there was a question to go to the jury in the premises, we do not feel at liberty to reverse this judgment and set aside the verdict of the jury, on the ground that there was no evidence that would justify the same.

[5] The second assignment of error is tantamount to the one we have just been considering. The only other assignment is, that the court below erred in affirming the following point of the plaintiff:

"That the plaintiff had a right to assume that the flagman would obey the rules of the company and perform his duty."

As an abstract proposition, this is true. The court did not use this language in its charge, and we do not think that, taken in connection with what was actually said by the trial judge, as above quoted, in regard to the question of contributory negligence, there was any harmful error in affirming said point. It was in effect saying to the jury that, though the conductor had a right to assume that the flagman would perform his duty, his knowledge of and acquiescence in the nonperformance of it, would be contributory negligence on the part of the plaintiff, and would prevent any recovery for the negligence of the defendant.

We think, therefore, that the judgment below should be affirmed.