GULF, C. & S. F. RY. CO. v. COOPER et al. (No. 5697.)

(Court of Civil Appeals of Texas. Austin. Dec. 6, 1916. Rehearing Denied Jan. 24, 1917.)

1. APPEAL AND ERROR ⬅️930(1)—INJURIES TO SERVANT—APPEAL—PRESUMPTION.

In an action under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]) for death of a brakeman, where no special charge was requested as to the reduction of recovery by decedent's negligence, and no complaint is made as to the amount of the verdict, which was general as to the amount of damages, the Court of Civil Appeals will presume that the jury found whatever was necessary to sustain their verdict, i. e., that they found that deceased was not negligent, or, if he was, that they made proper allowance therefor in assessing damages.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755, 3756, 3758; Dec. Dig. ⬅️930(1).]

2. MASTER AND SERVANT ⬅️286(33) — INJURIES TO SERVANT—NEGLIGENCE.

It cannot be said that a railroad, as a matter of law, was not negligent, in crushing its brakeman between two cars attempted to be coupled, because its conductor did not know that the brakeman was between the cars, since the question would still remain whether or not the conductor was negligent in not knowing the fact.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1020; Dec. Dig. ⬅️286(33).]

3. EVIDENCE ⬅️590 — CREDIBILITY — TESTIMONY OF INTERESTED WITNESS — BINDING FORCE.

In an action for death of a railroad brakeman, the jury were not bound to believe the testimony of the road's conductor, as he was an interested witness.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2439; Dec. Dig. ⬅️590.]

4. MASTER AND SERVANT ⬅️286(1), 288(1), 289(1)—INJURIES TO SERVANT—NEGLIGENCE — ASSUMPTION OF RISK — QUESTIONS FOR JURY.

Ordinarily the question of negligence, contributory or otherwise, as well as that of assumed risk, is for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1008, 1068, 1069, 1087, 1088, 1089; Dec. Dig. ⬅️286(1), 288(1), 289(1).]

5. MASTER AND SERVANT ⬅️204(1)—FEDERAL EMPLOYERS' LIABILITY ACT — ASSUMPTION OF RISK.

The federal Employers' Liability Act does not abolish assumed risk as a defense, except where the failure of the railway company to comply with the act as to safety appliance equipment has contributed to the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 544; Dec. Dig. ⬅️204(1).]

6. MASTER AND SERVANT ⬅️203(1), 227(1) — "CONTRIBUTORY NEGLIGENCE" — "ASSUMPTION OF RISK."

The distinction between "assumed risk" and "contributory negligence" is that contributory negligence implies fault or a breach of duty on the part of the injured servant, either by doing or failing to do something that a reasonably prudent man would not have done or would not have failed to do to avoid being injured, while dangers incident to an employment, which ordinary prudence cannot always avoid, when known or obvious to the employé, are assumed by him as an implied part of his contract of employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–540, 542, 668; Dec. Dig. ⬅️203(1), 227(1).

For other definitions, see Words and Phrases, First and Second Series, Assumption of Risk; Contributory Negligence.]

7. MASTER AND SERVANT ⬅️226(1)—FEDERAL EMPLOYERS' LIABILITY ACT—ASSUMPTION OF RISK.

Where a locomotive engineer failed to obey a brakeman's stop signal, so that the latter was crushed between two cars, one of which he was attempting to prepare for coupling, such brakeman did not assume the risk of injury by voluntarily placing himself in front of the drawhead of the standing car, since, by the Employers' Liability Act, the engineer's act was the act of the road, and the servant does not assume the risk of injury arising from the negligence of the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659, 660, 661, 665; Dec. Dig. ⬅️226(1).]

8. EXECUTORS AND ADMINISTRATORS ⬅️22(1)—TEMPORARY ADMINISTRATRIX—AUTHORITY TO APPOINT—STATUTES.

Under Rev. St. arts. 3297, 3298, authorizing the county judge to appoint a temporary administrator and to define the powers conferred by such an appointment, the probate court had authority to appoint the widow of a railroad's brakeman, killed in service, temporary administratrix of his estate to bring suit against the railroad under the federal Employers' Liability Act; the appointment being made October 18, 1915, and the suit being tried November 24th, before the next meeting of the probate court of the county.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 116, 123–125; Dec. Dig. ⬅️22(1).]

Appeal from District Court, Bell County; John D. Robinson, Judge.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by Mrs. Dona Cooper, administratrix, and others, against the Gulf, Colorado & Santa Fé Railway Company. From a judgment for plaintiffs, defendant appeals. Judgment affirmed.

Terry, Cavin & Mills, and A. H. Culwell, all of Galveston, for appellant. Winbourn Pearce, of Temple, and A. L. Curtis, of Belton, for appellees.

### Findings of Fact.

JENKINS, J. On May 27, 1915, W. D. Cooper was a brakeman on appellant's train. He went between the cars to adjust a knuckle in order to make a coupling. He was caught between the drawheads and received injuries from which he died immediately. At the October term, 1915, the county judge of Bell county, where the deceased resided at the time of his death, appointed his wife, Mrs. Dona Cooper, temporary administratrix of the estate of W. D. Cooper, deceased, to take charge of his personal property, and "to institute, maintain, and prosecute a suit for damages against the Gulf, Colorado & Santa Fé Railway Company on account of the injuries received by W. D. Cooper, which injuries resulted in his death, which action may be brought and maintained for the benefit of such persons as may be entitled to recover." Mrs. Cooper qualified as such temporary administratrix. She thereafter filed this suit in behalf of herself and the four minor children of herself and W. D. Cooper, deceased. The case was tried before a jury upon a general charge in the district court of Bell county, November 24, 1915, and resulted in a verdict in favor of appellees for $12,000; $6,000 for Mrs. Cooper, and $1,500 for each of the four children. Appellees alleged that while W. D. Cooper was employed by appellant as a brakeman, and while working in that capacity on a freight train, in the usual and customary discharge of his duties, he went between two cars to arrange the coupling apparatus; that it was necessary for him to do so, and that, while so engaged, other employés of appellant negligently shoved the cars together in such way as to catch him between the drawheads and injure him so that he died; that such movement of the cars was without warning to deceased, and in disobedience of a stop order given by deceased.

T. H. Henderson, a witness for appellees, an experienced railroad man, who had in early life worked as a brakeman, and had worked 25 years in the engine department, 12 years as an engineer, testified, in substance, that he lived with his father about 55 steps south of the railroad track where the injury occurred; that the local train came in from the west between 3 and 4 o'clock p. m. and cut loose a carload of crushed gravel and distributed the same upon the track; that at the time of the accident he and his father were standing at his father's yard fence; that after the rock was unloaded the engine was backing the empty car slowly toward a furniture car which had been left standing on the track; that Cooper got onto the gravel car and was riding back for a distance of 25 or 30 yards, at which time he jumped off and ran ahead on the outside of the track about 15 or 20 yards, when he gave the engineer a stop signal three times, and went in on the center of the track and ran to where the furniture car was standing; that when he gave the stop signal he was near the furniture car, but was some 40 feet ahead of the moving car; that the stop signal was not obeyed, and the car did not stop until it struck the furniture car; that the place where the injury occurred was not directly in front of him, so that the moving car cut off his view of the impact; that another brakeman, Housely, who was some 40 feet distant, ran up and looked in and gave the engineer a violent signal to move forward, from which he inferred that Cooper was hurt; that he immediately went to the place; and that Cooper breathed only a few times after he got to him. This testimony was corroborated by other witnesses. It was also contradicted by the other brakeman, and by the conductor; but the finding of the jury in appellees' favor was under the charge given, in effect, that this testimony was true, and we therefore adopt the testimony of the witness Henderson as above set out as facts in this case.

By reason of the moving car's cutting Cooper off from Henderson's view, he could not see whether or not Cooper looked back after he went in on the track. Cooper was standing in front of the drawheads when he was struck, facing west; that is, with his back towards the moving car, as was shown by food which he spat on the drawhead of the furniture car. Had he been standing to one side of the drawhead, he would not have been hurt. Had he looked back, he could have seen that the moving car had not stopped. At the rate the car was moving, the engineer could have stopped it within three feet. It was moving at the rate of three or four miles an hour.

It was admitted that the train upon which deceased was at work was at the time of his death engaged in interstate commerce, and that the appellant had complied with the federal Safety Appliance Act (Act March 2, 1893, c. 196, § 2, 27 Stat. 531, U. S. Comp. Stat. 1913, § 8606 et seq.) in properly equipping its said cars with automatic couplers; and we find such to be the fact.

### Opinion.

Appellant assigns error upon that portion of the fifth paragraph of the court's charge which reads:

" * * * And if you further believe and find from the evidence that, at the time and place alleged, said W. D. Cooper was in the employment of the defendant as a railway brakeman on one

of defendant's freight trains, and if you further believe from the evidence that, while in the ordinary discharge of his duties as such brakeman, it became and was necessary to enter between such freight cars to adjust the coupling apparatus thereon, and that while so engaged the defendant, its servants and employés, carelessly and negligently shoved the said cars together, catching the said W. D. Cooper between said cars and thereby fatally injuring him, as alleged, and if you further find that the moving of said cars at the time and in the manner they were moved was 'negligence,' as that term has been defined heretofore, and if you further find that such negligence, if any, was the direct and proximate cause of the injury and death of said W. D. Cooper, then you will find for plaintiff and assess her damages as hereinafter directed, unless you find for defendant under other instructions given you in this charge."

A correct definition of "negligence" had been given in a previous part of the charge.

The appellant submits as propositions under this assignment of error: (1) That there was no evidence that it was necessary for the deceased to go between the cars at the time he did so, and that therefore in going between the cars he was not in the discharge of any duty which he owed to appellant. (2) That there was no evidence of negligence on the part of the appellant in that the conductor did not know that the deceased was between the cars at the time the same were shoved together. (3) That the undisputed evidence showed that the proximate cause of the injury was the negligence of the deceased in voluntarily placing himself in a position of danger, and that the court should have so instructed the jury, instead of leaving that issue for them to determine. (4) That the undisputed evidence showed that the deceased assumed the risk of the injury received by him, and that the court should so have instructed the jury, instead of leaving that issue for their determination. (5) The evidence conclusively shows that, under the terms of the federal Employers' Liability Act, the deceased assumed the risk. (6) The appellant having complied with the law as to automatic couplers, no duty devolved upon the deceased to go between the cars to effect the coupling. (7) There being no evidence that the coupling was defective, the deceased assumed the risk in going between the cars to make the coupling. (8) There being no evidence that the coupling was defective, the deceased was guilty of negligence as a matter of law in going between the cars.

It will be seen that several of these propositions cover practically the same ground, and we shall not undertake to discuss them seriatum.

The federal Employers' Liability Act abolishes the plea of contributory negligence as a bar to a cause of action, but requires the jury to diminish the damages in proportion to the negligence of the injured party, except where a violation of that statute by the railway company contributed to the injury, in which case no diminution of damages is to be allowed on account of the contributory negligence of the injured party. Railway Co. v. Horton, 233 U. S. 502, 34 Sup. Ct. 635, 58 L. Ed. 1069, L. R. A. 1915C, 1 Ann. Cas. 1915B, 475.

[1] The court, in a subsequent part of its charge, properly instructed the jury as to this phase of the law. As the jury returned a general verdict as to the amount of damages, it cannot be determined with certainty whether or not they found that the deceased was guilty of contributory negligence. No special charge was requested on this phase of the case; no complaint is made as to the amount of the verdict. Therefore it will be presumed that the jury found in this regard whatever was necessary to sustain their verdict. That is to say, that they found that the deceased was not guilty of contributory negligence, or, if he was, that they made proper allowance therefor in assessing the damages.

But the contention of appellant is that the undisputed evidence shows that the deceased was guilty of contributory negligence as a matter of law, and that the jury should have been so instructed, instead of leaving to them to find, as they may have done, under the charge given, that he was not guilty of contributory negligence. This proposition rests upon the contention that appellant, having furnished its cars with automatic couplers, and the same not being out of repair, it was not the duty of the deceased to go between the cars to effect the coupling.

Under the old system, it was necessary for the brakeman to stand between the cars at the time of the impact and make the coupling by means of a pin fastened to the draw head with a chain. This was very dangerous, and it was to avoid this danger that railway companies were required to furnish their cars with automatic couplers—that is to say, such as would couple automatically by impact when the cars came together—and thus the brakeman, in order to effect the coupling, need not remain between the cars until the impact is made. But the evidence in this case shows that, notwithstanding the cars were furnished with automatic couplings, and the same are not out of repair, it may be necessary for a brakeman to go between the cars and adjust with his hands the knuckle, in order that the coupling may be automatically made when the cars come together; the safety to the brakeman being that when he has adjusted the knuckle he can get from between the cars before they come together, there being no necessity for his remaining there to make the coupling, as under the old system. In such case, the cars are supposed to be standing still while he is adjusting the knuckle.

Housely, the other brakeman, testified he and not Cooper, was giving the signals; that the empty car came back against the furniture car, but did not make the coupling. He says:

"I slacked ahead just a little, and I went ahead probably two feet and gave the stop signal. * * * I opened the one (the knuckle) on the furniture car, and he started to open the one on the ballast car; but I told him to leave it off, and he turned around and saw this apart on the furniture car and said, 'All right,' and I gave the back-up signal, and I looked to see if the coupling was made, and when I looked back in there the train had backed and Cooper was between the drawbars, and I gave a slack signal fast, and as the car wrenched off he said, 'Catch me,' and I caught him and he fell on the track."

This witness says that, when he turned to give the signal to back up, Cooper was standing at the end of the furniture car, and that, when he looked to see if the coupling had been made, Cooper was caught between the drawheads. The theory of appellant, based on this testimony, is that Cooper attempted to pass between the cars, after Housely had given the back-up signal, and was caught between the drawheads. While it is evident that the jury did not believe this witness as to who was giving the signals, it appears from his standpoint as an experienced brakeman that he regarded the adjustment of the knuckles as necessary, notwithstanding the fact that the coupling was automatic and not out of repair. Henderson, who, as has been said, was an experienced railroad man, testified:

"They (the brakemen) are accustomed to going in there (between the cars) in preparing the drawheads."

Upon cross-examination Housely said:

"I adjusted one knuckle, and he started to adjust the other, and I told him not to do that, and he said, 'All right.'"

[2, 3] There is no merit in the contention that appellant, as a matter of law, was not guilty of negligence because the conductor did not know that Cooper was between the cars. Such fact is not shown by the uncontradicted testimony, and, even if it was, the question would still remain whether or not the conductor was guilty of negligence in not knowing that Cooper was between the cars. Railway Co. v. Courtney, 30 Tex. Civ. App. 544, 71 S. W. 307. The conductor testified that he was not taking signals from Cooper, and did not know where he was. The jury were not bound to believe this testimony, as he was an interested witness. Wyatt v. Moore, 152 S. W. 1133; Gameson v. Gameson, 162 S. W. 1169; Bank v. Howard, 174 S. W. 719; Bank v. McWhorter, 179 S. W. 1150. Besides, he was contradicted by T. H. Henderson, J. R. Henderson, W. E. McCall, and D. M. McCall, each of whom testified that Cooper was giving signals to the engineer, and even the witness Housely testified that Cooper repeated a signal which he gave.

[4] Ordinarily, the question of negligence, contributory or otherwise, as well as that of assumed risk, is for the jury. Railway Co. v. Levi, 59 Tex. 674; Railway Co. v. Cunningham, 168 S. W. 428; Stalworth v. Refining Co., 175 S. W. 767; Railway Co. v. Thomas,

175 S. W. 822; Bonnet v. Railway Co., 89 Tex. 72, 33 S. W. 334; Railway Co. v. Fuller, 204 Fed. 45, 122 C. C. A. 359; Railway Co. v. Jarvis, 227 Fed. 8, 141 C. C. A. 562; Railway Co. v. Gadd, 207 Fed. 277, 125 C. C. A. 21; Railway Co. v. Goughnour, 208 Fed. 961, 126 C. C. A. 39; Railway Co. v. Cotts, 95 S. W. 602. The facts of this case do not take it out of the general rule. Besides, as hereinbefore stated, under the federal statute contributory negligence is not a bar to recovery, but goes only to a diminution of damages.

[5] Appellant seems to rely chiefly for support of its first assignment of error, as also its second, third, and fourth assignments, upon the doctrine of assumed risk. As we understand the federal Employers' Liability Act, it does not abolish assumed risk as a defense, except where the failure of the railway company to comply with the act as to safety appliance equipment has contributed to the injury, but that, with this exception, the doctrine of assumed risk is left as it was at common law. Railway Co. v. Horton, supra; Railway Co. v. Crockett, 234 U. S. 727, 34 Sup. Ct. 897, 58 L. Ed. 1564; Railway Co. v. Sauter, 223 Fed. 604, 139 C. C. A. 150.

[6] "Assumed risk" and "contributory negligence" are sometimes loosely treated as synonymous. This, perhaps, for the reason that the same act may constitute both assumed risk and contributory negligence. Railway Co. v. Allen, 48 Tex. Civ. App. 66, 106 S. W. 441. But there is a well-recognized distinction between assumed risk and contributory negligence. Contributory negligence implies fault or a breach of duty on the part of the injured party, either by doing or by failing to do something that a reasonably prudent man would not have done, or would not have failed to do, to avoid being injured under the same or similar circumstances. On the other hand, there is a certain amount of danger incident to many employments, which ordinary prudence cannot always avoid. Where these are known to the employé, they are assumed by him as an implied part of his contract of employment. An employé assumes the risk of those dangers known to him to be ordinarily incident to the labor which he has agreed to perform, or which are so obvious that a man of ordinary intelligence and prudence must necessarily be presumed to have learned of them in the ordinary course of his employment. Rogers v. Railway Co., 76 Tex. 502, 13 S. W. 540; Railway Co. v. Allen, supra; Bonnet v. Railway Co., 89 Tex. 72, 33 S. W. 334; Railway Co. v. Somers, 78 Tex. 439, 14 S. W. 779; Carter v. Railway Co., 155 S. W. 638; Oil Co. v. Carson, 185 S. W. 1003; Railway Co. v. Dickens, 170 S. W. 835; Railway Co. v. Horton, supra; Railway Co. v. Sauter, supra; Railway Co. v. Stewart, 223 Fed. 30, 138 C. C. A. 444; James v. Lumber Co., 44 L. R. A. 34 et seq., note.

[7] It is the contention of the appellant

that Cooper assumed the risk of the injury which he suffered for the reason that the undisputed evidence shows that he voluntarily placed himself in front of the drawhead of the standing car, and as an experienced brakeman, as well as a man of ordinary intelligence, he must necessarily have known that he would be crushed by the impact of the moving car when the cars came together. But there is another principle of law which must be taken into consideration under the facts of this case, viz. The servant does not assume the risk of injury arising from the negligence of the master (except under circumstances not involved in this case, and therefore need not be here discussed). Railway Co. v. Jowers, 110 S. W. 946; Railway Co. v. Mitchell, 48 Tex. Civ. App. 381, 107 S. W. 374; Railway Co. v. O'Connor, 78 S. W. 374; Railway Co. v. Bosher, 165 S. W. 93; Railway Co. v. Fuller, 204 Fed. 45, 122 C. C. A. 359; Railway Co. v. Gadd, 207 Fed. 277, 125 C. C. A. 21; Railway Co. v. Goughnour, 208 Fed. 961, 126 C. C. A. 39.

By virtue of the terms of the Employers' Liability Act, the act of the engineer was the act of the railway company. Railway Co. v. Gadd, supra. The jury found that the engineer was negligent in shoving the car against Cooper, and that such negligence was the proximate cause of the injury. This finding is supported by the evidence. Except for the failure of the engineer to obey Cooper's stop signal, there was no danger in Cooper's going and remaining between the cars. He did not assume the risk of danger to himself, for the reason that, aside from the negligence of the engineer, there was no danger. He had the right to assume that the engineer would observe and obey the stop signal, as was his duty to do. Railway Co. v. Goughnour, supra; Cunningham v. Neal, 49 Tex. Civ. App. 613, 109 S. W. 455; Railway Co. v. Courtney, 30 Tex. Civ. App. 544, 71 S. W. 307.

This is also an answer to appellant's contention that Cooper assumed the risk, because he chose the more dangerous way in which to perform his duty. But for the negligence of the engineer, the way which he chose did not involve any danger at all.

Appellant cites the case of Railway Co. v. Hynson, 101 Tex. 545, 109 S. W. 929, in which it was held, as a matter of law, that Hynson assumed the risk. The alleged negligence in that case was the failure of the railway company to block its guard rails—a fact which was known to Hynson, or which, under the undisputed testimony, he was presumed to have known. There was no negligence on the part of the engineer in pushing the train upon Hynson. He was not given any stop signal. It was also held in that case that Hynson assumed the risk, because he chose the more dangerous way in attempting to make the coupling. The danger of the way which he chose was obvious, as, if his foot should be caught in the guard rail, as it was, the engineer would not know that fact, and Hynson would be unable to give the stop signal. The case of Gilbert v. Railway Co., 128 Fed. 529, 63 C. C. A. 27, was decided upon the doctrine of contributory negligence, which was then a bar to recovery.

The court, at appellant's request, instructed the jury as to appellant's theory that Cooper at the time of his injury was attempting to cross between the moving cars and was caught between the drawheads, and to find for appellant if they found such to be the fact.

In view of the special charges given at appellant's request, and in view of the further fact that the charge of the court necessarily precluded any recovery, unless the jury found that negligence on the part of the appellant was the proximate cause of the injury, we do not think that the assignments as to the refusal of the court to give the special instructions requested by appellant are well taken.

We overrule appellant's assignment of error as to the admission of the evidence that Mrs. Cooper was appointed temporary administratrix of the estate of W. D. Cooper, deceased, for the purpose of bringing this suit.

[8] It is the contention of appellant that the probate court had no authority to make such appointment, for the reason that the prosecution of the suit would necessarily extend beyond the time of the next meeting of the probate court. The appointment was made October 18, 1915; this suit was tried November 24, 1915, which was before the next meeting of the probate court of Bell county. The statute authorizes the county judge to appoint a temporary administrator (R. S. art. 3297), and to define the powers conferred by such appointment (article 3298). Insurance Co. v. Gibbs, 34 Tex. Civ. App. 131, 78 S. W. 399, where the court said:

"The county court had the authority to appoint a temporary administrator to prosecute the suit, and to continue such temporary administration so long as was necessary to accomplish the ends of the original appointment."

To the same effect is Williams v. Bank, 91 Tex. 651, 45 S. W. 690. See, also, Railway Co. v. Hook, 60 Tex. 403; Callahan v. Houston, 78 Tex. 494, 14 S. W. 1027.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.