MATHY *v*. CHICAGO & NORTH WESTERN RAILWAY CO.

1. APPEAL AND ERROR—FINDING OF COURT—EVIDENCE—MASTER AND SERVANT—SWITCHMAN.

In action under Federal employers' liability act for death of switchman, holding of trial judge that plaintiff's decedent assumed the risk of his employment as a matter of law can be sustained only in case such is disclosed to be the fact by undisputed testimony (45 USCA, §§ 51–59).

2. MASTER AND SERVANT—SWITCHMAN—ASSUMPTION OF RISK.

Switchman engaged in interstate commerce, who had worked with train crew for a number of days in switching over right of way on which a pile of lumber had been placed with insufficient clearance and had warned a fellow workman of the proximity of the pile to the track *held*, as a matter of law to have had full knowledge of the risk and to have assumed it as a part of his contract of employment (45 USCA, §§ 51–59).

3. SAME—ASSUMPTION OF RISK—KNOWLEDGE OF DANGER.

General rule in cases under Federal employers' liability act that question of assumption of risk is for jury in case where injury arose, not from use of standard equipment or dangers inherent from permanent obstructions or structures of long standing but from employer's negligence in placing or allowing to be placed in the way of employee, unnecessary hazards or dangers *held*, inapplicable where uncontradicted testimony shows decedent employee had actual knowledge of condition of right of way where he was injured (45 USCA, §§ 51–59).

4. SAME—DEFECTIVE APPLIANCES—ASSUMPTION OF RISK.

An employee is not obliged to pass judgment upon employer's methods of transacting his business but may assume that reasonable care will be used in furnishing appliances necessary for its operation but where defect is known to employee, or is so patent as to be readily observed by him, he cannot continue to use such defective apparatus without assuming the risk under Federal employers' liability act (45 USCA, §§ 51–59).

5. Same—Federal Employers' Liability Act—Assumption of
   Risk.

   Under Federal employers' liability act an employee assumes the
   risks normally and necessarily incident to his employment, and
   also the extraordinary risks, or risks caused by his master's
   negligence; but he assumes the latter only when they are
   obvious or fully known to him and are such as would, under
   the circumstances, be seen and appreciated by an ordinarily
   prudent person (45 USCA, §§ 51–59).

6. Same—Assumption of Ordinary or Obvious Risks.

   Under the Federal employers' liability act, an employee as-
   sumes the risk of those dangers known to him to be ordinarily
   incident to labor he has agreed to perform or which are so
   obvious that a man of ordinary intelligence or prudence must
   necessarily be presumed to have learned of them in the ordi-
   nary course of his employment (45 USCA, §§ 51–59).

Appeal from Menominee; Bell (Frank A.), J.
Submitted June 13, 1935. (Docket No. 47, Calendar
No. 38,427.) Decided October 30, 1935.

Case by Ann Mathy, administratrix of the estate
of Vital Mathy, deceased, against Chicago & North
Western Railway Company for death of plaintiff's
decedent alleged to have been caused by defendant's
negligence. Verdict for plaintiff. Judgment for de-
fendant *non obstante veredicto*. Plaintiff appeals.
Affirmed.

*George Barstow,* for plaintiff.

*Ryall & Frost,* for defendant.

North, J. Plaintiff's decedent, Vital Mathy, was
a switchman in the employ of the defendant railway
company which was engaged in interstate commerce.
While so employed, Mathy met with an accident
which resulted in his death. Plaintiff, as the ad-
ministratrix of his estate, brought this suit under

the Federal employers' liability act (45 USCA, §§ 51–59) to recover damages, alleging that decedent's death was caused by defendant's negligence. The case was submitted to a jury and plaintiff had verdict for a substantial amount. At the close of the proofs defendant made a motion for a directed verdict. The trial court took this motion under advisement, and after verdict disposed of the motion by entering a judgment in favor of defendant *non obstante veredicto*. Plaintiff has appealed.

The two important questions presented by this appeal are stated by appellant as follows:

1. "Was there sufficient evidence in the case to justify a jury in finding that the negligence of the defendant was the proximate cause of the accident?"

2. "Did the evidence in the case show conclusively that the deceased assumed the risk" of his employment?

If the latter one of these questions is answered affirmatively the judgment entered must be sustained. We will therefore give it first consideration. The holding of the trial judge that plaintiff's decedent assumed the risk of his employment as a matter of law can be sustained only in case such is disclosed to be the fact by undisputed testimony. This necessitates a rather detailed statement of the testimony on this phase of the case.

The accident happened about 10 a. m. on August 12, 1933, while the switching crew of which plaintiff's decedent was a member was working in the mill yard of the Marinette & Menominee Box Company at Marinette, Wisconsin. The defendant company has a 50-foot right of way for what is called its "running track" extending in an easterly and westerly direction through the mill yard of the box company. The switching crew was undertaking

to place two flat cars loaded with box bolts on a siding which served the box company's mill. The train at the time of the accident was on the "running track." It consisted of a locomotive moving backward and pulling three cars. The one nearest the locomotive was an empty box car, the other two being the flat cars loaded with box bolts. Plaintiff's decedent gave the engine crew the signal to proceed in an easterly direction for the purpose of reaching the switch to the spur track leading south from the "running track" and to the place of unloading at the box factory where the two flat cars were to be spotted. A man by the name of Chernosky, a fellow switchman of plaintiff's decedent, was the only eyewitness of the conduct of deceased immediately preceding the accident. He testified:

"I last saw Mathy just where I said. He got on the side of the box car, on the west end of the box car, on the north side of the track. He was riding on that side of the car toward the eastward the last I saw of him. * * * I didn't see anything of the accident."

A short distance east of the point where Mathy boarded the box car and on the northerly side of the "running track" there was a pile of lumber consisting of boards an inch thick and of varying lengths. The ends of the boards extending toward the track were uneven. Defendant's roadmaster testified that he measured the clearance between the lumber pile and the rail and found a distance of 3 feet 7 inches between the rail and the board that projected farthest from the pile at the point of accident. Other witnesses testified there was less clearance between the rail and the nearest portion of the lumber pile. A box car overhangs the track approximately two feet. The railroad regulations required a clearance of six feet. The theory of plaintiff's case, although

there was no direct testimony to that effect, is that plaintiff's decedent by coming in contact with a projecting portion of the lumber pile was knocked from his position on the box car and was run over by the flat car immediately following. Decedent sustained serious injuries which resulted in his death 4 or 5 hours later.

There is considerable variance in the testimony as to how long prior to the accident this lumber pile had been placed adjacent to defendant's track. One witness testified: "It could not have been over 4 or 5 days I don't think, maybe less than that, before the accident." Other witnesses fixed the time as being from a week to ten days, ten days to two weeks, a month to six weeks. But for whatever time it may have been there, and for a much longer period, plaintiff's decedent had been working as a member of this same switching crew; and incident to such employment was engaged from time to time in switching cars over this and adjacent tracks. Chernosky, who thought the pile of lumber had been there a week or ten days, testified that in the meantime he and Mathy had carried on switching operations in that locality about five or six different times. The foreman of the switching crew testified that on the average they had been switching over these tracks two or three times a week. At least the testimony is such as to establish conclusively that Mathy on several occasions had assisted in carrying on switching operations in the immediate vicinity after the lumber pile had been placed on the right of way. But aside from the foregoing it appears from Chernosky's testimony that Mathy knew of the lumber pile and its proximity to the track. We quote:

"Yes, sir, we were going in the saw mill track with some bolts that day (the day before the accident) and a box for sawdust, and he got off there

and I was hanging on the north side of the car, just before we got to the lumber pile, maybe 4 or 5 car lengths when I got on the outside of the car he reminded me and said, 'Look out for the lumber pile and see that it don't hit you.' I said, 'I know all about the lumber pile, but I thank you very much for telling me about it.' He got off opposite the saw mill track and I went down to the east switch to head into the saw mill track.''

In the light of the foregoing and other testimony in the record, we think the trial court rightly held that the risk was one of which the employee had full knowledge and which he assumed as a part of his contract of employment.

In appellant's brief, in urging that this phase of the case presented an issue of fact for the jury, it is pointed out that the courts in passing upon the question of assumed risk as being one of fact or one of law make a distinction between those cases wherein the injury arose from the use of standard equipment or dangers inherent from permanent obstructions, or structures of long standing and those cases wherein the injury arose from the employer's negligence in placing or allowing to be placed in the way of the employee unnecessary hazards and dangers. It is asserted by appellant that in the latter class of cases ''the question of assumption of risk cannot well be taken from the jury.'' Several authorities are cited in support of this contention. Without challenging the correctness of the asserted rule, we think it not applicable to the instant case because it appeared from uncontradicted testimony that plaintiff's decedent had actual knowledge of the condition of the right of way at the very point at which he was injured; and in consequence thereof he thereafter assumed the obvious and known risk which was in-

cident to his employment. One of the decisions cited by appellant contains the following:

"The employee is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. *This rule is subject to the exception* that where a defect is known to the employee, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation." *Choctaw, O. & G. R. Co.* v. *McDade,* 191 U. S. 64 (24 Sup. Ct. 24).

Under the circumstances disclosed by this record we cannot agree with appellant that notwithstanding the positive testimony of witness Chernosky, this phase of the record still presented an issue of fact for the jury, at least as to the credibility of the witness. In this connection we note that there is nothing inherently incredible about the testimony given, it was not weakened by cross-examination or impeachment, and it was wholly uncontradicted by any other testimony in the case. The risk was an obvious one and one of which decedent had actual knowledge as disclosed by undisputed testimony; and it must be held as a matter of law that it was a risk assumed by plaintiff's decedent incident to his employment; and under the Federal employers' liability act it constitutes a bar to recovery in the instant case.

"Under the Federal employers' liability act, an employee assumes the risks normally and necessarily incident to his employment, and also the extraordinary risks, or risks caused by his master's

negligence; but he assumes the latter only when they are obvious or fully known by him and are such as would, under the circumstances, be seen and appreciated by an ordinarily prudent person." *Howe* v. *Railroad Co.* (syllabus), 236 Mich. 577.

See, also, *Director General of Railroads* v. *Templin* (C. C. A.), 268 Fed. 483; and *Seaboard Air Line R.* v. *Horton,* 233 U. S. 492 (34 Sup. Ct. 635, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475).

"Knowledge of a fixed obstruction (stated in the body of the opinion to have been 'one or two pieces of timber, about 2 inches thick and 3 to 6 inches wide') over a track in such position as not to clear a man standing on top of a box car necessarily imports a risk to an experienced brakeman; and, in the absence of evidence of objection on his part or promise of reparation by the employer, assumption of the risk." *Kanawha & Michigan R. Co.* v. *Kerse* (syllabus), 239 U. S. 576 (36 Sup. Ct. 174).

We cannot accept as controlling herein appellant's contention that while decedent may have had actual knowledge of this pile of lumber on the right of way, it is not shown that he had actual knowledge of a piece or of pieces of lumber in the pile extending nearer to the track than the pile in general and which caused this unfortunate accident. The proximity of the lumber pile itself was a challenge sufficient to necessitate extra caution, and further, Chernosky's testimony discloses that decedent had actual knowledge of the existing danger. In this connection it is to be noted that plaintiff's decedent was an experienced switchman who had been engaged in railroading for many years.

"An employee assumes the risk of those dangers known to him to be ordinarily incident to the labor which he has agreed to perform, or which are so obvious that a man of ordinary intelligence and pru-

dence must necessarily be presumed to have learned of them in the ordinary course of his employment." *Gulf, C. & S. F. R. Co.* v. *Cooper,* (Tex. Civ. App.) 191 S. W. 579, citing numerous decisions.

Since the question hereinbefore considered is controlling of decision in the instant case, we forego discussion of other questions presented by appellant's brief.

Judgment entered in the circuit court is affirmed.

POTTER, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL and EDWARD M. SHARPE, JJ., concurred.

The late Justice NELSON SHARPE took no part in this decision.